UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| PETER ROSBECK and, | ) |
| KAREN ROSBECK, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | )   Civil Action No. 15-12954-LTS |
|  | ) |
| CORIN GROUP, PLC, CORIN USA | ) |
| LIMITED, INC., HOWMEDICA | ) |
| OSTEONICS CORP., and BRIGHAM | ) |
| AND WOMEN'S HEALTHCARE, INC. | ) |
| LENDERS NETWORK USA, Inc. | ) |
|  | ) |
| Defendants. | ) |

_____

MEMORANDUM AND ORDER ON PLAINTIFFS'
MOTION TO REMAND ACTION TO SUFFOLK SUPERIOR COURT

October 26, 2015

SOROKIN, J.

## I.   Introduction

Plaintiffs Peter and Karen Rosbeck (collectively "The Rosbecks") filed a Complaint in

Suffolk Superior Court stemming from complications following Mr. Rosbeck's hip resurfacing

surgery.  The Rosbecks have sued four defendants: Corin Group PLC ("Corin Group"); Corin

USA Limited, Inc. ("Corin USA"); Howmedica Osteonics Corporation ("Howmedica"); and

Brigham and Women's Health Care, Inc. ("BWH").  Doc No. 1-6.  Corin Group and Corin USA

(collectively "Corin") timely removed the case to this Court.  Doc. No. 1.  Howmedica consented

to the removal. Doc. No. 3.[1] The Rosbecks then filed this Motion to Remand Action to Suffolk Superior Court. Doc. No. 19. Corin and Howmedica responded to the motion, arguing in both the Notice of Removal and their Opposition papers that the Rosbecks fraudulently joined BWH to the action to defeat diversity, meaning the Court has jurisdiction. Doc. No. 24.[2] After careful review of the briefs and the parties' arguments at the Motion Hearing, see Doc. No. 29 (scheduling a hearing for this motion), for the reasons set forth below, the Court ALLOWS the Rosbecks' motion and remands this case to Suffolk Superior Court.

## II.    Facts

As the Court deals with a question of fraudulent joinder, it draws this recitation of alleged facts primarily from the Rosbecks' complaint. Cf. Universal Truck & Equipment Co., Inc. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014) ("[I]t is generally recognized that, under the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant.") (emphasis added). However, when necessary, the Court looks to "affidavits and other materials that bear on the question of whether there is a reasonable basis for joinder of a defendant." In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig., 76 F. Supp. 3d 321, 333 (D. Mass. 2015).

In 2008, Mr. Rosbeck had hip resurfacing surgery at BWH, a Boston hospital. Doc. No. 1-6 ¶ 6.[3] Surgeons inserted a Cormet 2000 hip resurfacing system ("Cormet System"). Id. The

---

[1] While all defendants typically must consent to removal, Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 75 (1st Cir. 2009), there is an exception for defendants allegedly fraudulently joined. In re Pharmaceutical Indus. Average Wholesale Price Litig., 431 F. Supp. 2d 109, 117 (D. Mass. 2006).

[2] Howmedica "join[ed] in and incorporate[d] the Memorandum in Opposition submitted by [Corin]." Doc. No. 25. at 1. Accordingly, when the Court refers to arguments "Corin" makes, that reference includes Howmedica as well.

[3] BWH is "a corporation existing under the laws of the State of Massachusetts with its principal place of business in Massachusetts."

system included a Cormet Cup 570-06-054 and a Cormet Head 571-05-048.  Id.  Corin and

Howmedica designed, developed, tested, distributed, and sold those devices.  Id.  Corin is "a

corporation existing under the laws of the United Kingdom with its principal place of business in

the United Kingdom."  Doc. No. 1 ¶ 8.  Howmedica is "a corporation existing under the laws of

the state of New Jersey, with its principal place of business in New Jersey."  Id. ¶ 9.  The FDA

granted the Cormet System, a class III medical device, premarket approval ("PMA").  Doc. No.

1-6 ¶ 9.  The FDA granted PMA provided that each Cormet System was in compliance with a

variety of manufacturing requirements.  Id. ¶ 9a.  These requirements dealt with features such as

the permissible materials for various parts of the Cormet System, and the dimensions of each of

the parts.  Id. ¶ 9.  These standards are known as the "Approved Design Standards."  Id. ¶ 9i.

To ensure compliance with the Approved Design Standards, "[d]efendants use hip

simulator tests."  Id. ¶ 9k.  These tests use a synthetic fluid to mimic the synovial fluids that the

body creates to lubricate joints, such as the hip, whenever joints rub together.  Id. ¶ 9l.

Essentially, the tests involves, 1) lubricating the Cormet System with the synthetic fluid (as the

body does when joints begin to rub together); 2) prompt the components of the Cormet System to

rub together, "like a normal hip joint would;" and 3) examine the Cormet System to see if it

suffered impermissible wear from the joint friction.  Id. ¶ 9m.  These tests used more synthetic

fluid than the body naturally releases, "creating an unrealistically thick layer of fluid that

separates the metal surfaces and reduces the abrasion between them in the testing environment."

Id. ¶ 9p.  This enables certain Cormet Systems not in compliance with the Approved Design

Standards to nevertheless pass the test.  Id. ¶ 9q.

Mr. Rosbeck's body developed an extensive rash in April 2010.  Id. ¶ 6.  He began

experiencing hip pain, "depression, severe tinnitus and 'brain fog,'" conditions that

"substantially affected his ability to work and interfered with every aspect of his life." Id.  He

received a blood test in August 2011, which indicated high levels of chromium and cobalt.  Id.

¶ 7.  After multiple years of uncertainty over the cause of his sufferings, "in June 2013, Mr.

Rosbeck underwent revision surgery," and "[t]he operative reported indicate[d] that 'the

resurfacing unit had done some significant damage to the neck of the femur.'"  Id. ¶ 7.  The

system implanted into Mr. Rosbeck "could not withstand ordinary wear and tear, causing

extremely elevated levels of cobalt and chromium ions to be released into his body and causing

[Mr. Rosbeck's] medical problems, injures, and damages."  Id. ¶ 20(a)(ix); see id. ¶¶ 21, 23.

After this revision surgery, "Mr. Rosbeck's condition has improved and he has been able to

return to a more healthy and productive lifestyle."  Id.  ¶ 7.  Nevertheless, the entire episode

inflicted Mr. Rosbeck with medical expenses, "years of debilitating physical and mental pain and

anguish," millions of dollars of lost income, and a need for further "painful and invasive"

medical procedures.  Id. ¶ 25.

On April 29, 2015, the Rosbecks filed this suit in Suffolk Superior Court.  Id. at 22.  Mr.

Rosbeck pled claims of negligence, breach of warranty, and unfair and deceptive trade practices

under Mass. Gen. Laws ch. 93A against Corin and Howmedica, and breach of warranty claims

against BWH.  Id. ¶¶ 28, 32, 42.  Mrs. Rosbeck alleges loss of consortium against all defendants.

Id. ¶¶ 30, 45.  Corin removed the case to this Court on July 15, 2014.  Doc. No. 1.

**III.**   **Legal Standard**

In Universal Truck, the First Circuit observed that "under the doctrine of fraudulent

joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no

reasonable possibility that the state's highest court would find that the complaint states a cause of

action upon which relief may be granted against the non-diverse defendant." 765 F.3d at 108.[4]

<u>Universal Truck</u> does not define what exactly constitutes a reasonable possibility.  As another

circuit has observed, "fraudulent joinder . . . is rather easily defined, [but] it is much more

difficul[t to] appl[y]." <u>Filla v. Norfolk S. Ry. Co.</u>, 336 F.3d 806, 809 (8th Cir. 2003)).

Clearly, if existing state law squarely precludes a plaintiff's claim against a non-diverse

defendant, and such deficiency is "apparent from the face of the original complaint," the non-

diverse defendant is fraudulently joined. <u>See</u> <u>Universal Truck</u>, 765 F.3d at 108 (finding

fraudulent joinder when existing state law barred the claim); <u>see also</u> <u>McCabe v. Gen. Foods</u>

<u>Corp.</u>, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action

against a resident defendant, and the failure is obvious <u>according to the settled rules of the state</u>,

the joinder of the resident defendant is fraudulent.") (citing <u>Moore's Federal Practice</u> (1986)

¶ O.161[2])) (cited in <u>Universal Truck</u>, 765 F.3d at 108 n. 3) (emphasis added).  The difficulty

arises when no state apex court decision answers the question, notwithstanding indications

(opinions in related areas, other jurisdictions' answers to the particular question, etc.) pointing in

certain directions.

Generally speaking, federal courts, <u>so long as they have jurisdiction</u>, must "decide

questions of state law whenever necessary to the rendition of a judgment," even when "the

answers to the questions of state law are difficult or uncertain or have not yet been given by the

highest court of the state." <u>Meredith v. City of Winter Haven</u>, 320 U.S. 228, 234-35 (1943).

This motion, however, addresses an antecedent question—does the Court have jurisdiction? <u>See</u>

<u>Bobby Jones Garden Apartments, Inc. v. Suleski</u>, 391 F.2d 172, 175 (5th Cir. 1968) ("Unlike the

---

[4] The Rosbecks argue that "Corin must show that plaintiffs have '<u>no possibility</u>' of recovering against the hospital." Doc. No. 20 at 3 (emphasis added).  This goes beyond what <u>Universal Truck</u>, which mentioned "no <u>reasonable</u> possibility," 765 F.3d at 108 (emphasis added), requires.

parties who joust for victory on who wins or loses our sole concern is: Who tries the case? State

or Federal Court?"). <u>Bobby Jones</u> explains how this distinction impacts the analysis:

> "This is an <u>Erie</u> problem in part, but only part.  In the usual diversity situation a Federal
> Court, no matter how difficult the task, must ascertain (and then apply) what the state law
> is.  But here the question is whether there is arguably a reasonable basis for predicting
> that the state law might impose liability on the facts involved here.  If that possibility
> exists, a good faith assertion of such an expectancy in a state court is not a shame, is not
> colorable and is not fraudulent in fact or in law."

<u>Id.</u> at 175-176; <u>see also</u> <u>Filla</u>, 336 F.3d at 811 ("Unlike most diversity cases (where a

federal court is required to ascertain and apply state law no matter how onerous the task), here,

the district court's task is limited to determining whether there is arguably a reasonable basis for

predicting that state law might impose liability based upon the facts involved. . . . [I]n its review

of a fraudulent-joinder claim, the court has no responsibility to <u>definitively</u> settle the ambiguous

question of state law.") (emphasis in original).

Against this backdrop, other jurisdictions (as far as the Court can tell) universally "review

claims of fraudulent joinder under a standard more lenient than that for a motion to dismiss

[under Federal Rule of Civil Procedure 12(b)(6)]." <u>Mayes v. Rapoport</u>, 198 F.3d 457, 466 n. 15

(4th Cir. 1999); <u>accord e.g.</u>, <u>Casias v. Wal-Mart Stores, Inc.</u>, 695 F.3d 428, 433 (6th Cir. 2012)

(noting that the moving party's burden on fraudulent joinder is higher than on a motion to

dismiss); <u>Knudson v. Sys. Painters, Inc.</u>, 634 F.3d 968, 980 (8th Cir. 2011) (same); <u>Batoff v.</u>

<u>State Farm Ins. Co.</u>, 977 F.2d 848, 852 (3d Cir. 1992) (same).

One manifestation of this is courts' obligation to "resolv[e] . . . legal ambiguities in the

controlling state law in favor of the non-removing party." <u>Burden v. Gen. Dynamics Corp.</u>, 60

F.3d 213, 217 (5th Cir. 1995); <u>see also</u> <u>In re Fresenius Litigation</u>, 76 F. Supp. at 333 ("[I]n

determining whether a plaintiff has the possibility of recovery against a defendant, the court is to

resolve all . . . ambiguities of law in favor of the non-removing party."). Another is the frequent

characterizations of the defendant's burden of proving fraudulent joinder as "heavy."  See, e.g.,

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998) ("The defendant seeking

removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must

be resolved in favor of the plaintiff."); Phillips v. Medtronic, Inc., 754 F. Supp. 2d 211, 217 (D.

Mass. 2010) ("The Defendants bear a heavy burden of proving fraudulent joinder . . . .").  The

Court, for the reasons stated above, agrees with these characterizations, and evaluates the motion

accordingly.

## IV.    Discussion

In its Notice of Removal, and again in opposing this motion, Corin enumerates three

reasons why BWH is fraudulently joined: 1) Massachusetts law precludes Mr. Rosbeck from

having a reasonable possibility of recovery against BWH under a warranty liability theory;[5] 2)

preemption bars the claim against BWH; and 3) the statute of limitations bars recovery against

BWH.  Doc. No. 1 ¶¶ 16, 19, 20; Doc. No. 24 at 6, 16, 19.  The Court addresses each of these

arguments in turn.  But before doing so, the Court lays out the broad jurisdictional principles

governing the analysis.

Generally speaking, "any civil action brought in a State court of which the district courts

of the United States have original jurisdiction, may be removed by the defendant or the

defendants, to the district court of the United States for the district and division embracing the

place where such an action is pending."  28 U.S.C. § 1441.  The Court has original, so-called

"diversity" jurisdiction to hear cases between citizens of different states, so long as the amount-

in-controversy is greater than $75,000.  See 28 U.S.C. § 1332.[6]  However, diversity jurisdiction

---

[5] If Mr. Rosbeck's warranty claim against BWH cannot survive, neither can Mrs. Rosbeck's breach of consortium claim.  See Correllas v. Viveiros, 572 N.E.2d 7, 13 (Mass. 1991) ("Because we affirm summary judgment with respect to Patricia Correllas's claims, the summary judgment on the loss of consortium claim is also affirmed.").
[6] The Court is satisfied, and the parties do not dispute, that this case fulfills the amount-in-controversy requirement.

"does not exist where any plaintiff is a citizen of the same state as any defendant." <u>Alvarez-Torres v. Ryder Mem'l Hosp. Inc.</u>, 582 F.3d 47, 54 (1st Cir. 2009).  If properly joined, BWH's presence defeats this requirement as well, since both it and the Rosbecks, but only those two parties, are citizens of Massachusetts.  Nevertheless, if BWH is fraudulently joined, their presence will not preclude removal.  <u>See Universal Truck</u>, 765 F.3d at 108.

"The party seeking removal bears the burden of showing that federal jurisdiction lies." <u>Coll. of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.</u>, 585 F.3d 33, 39 (1st Cir. 2009).  Finally, the Court construes the removal statute against allowing removal, in part because of "the important federalism concerns at play in considering removal jurisdiction." <u>Rossello-Gonzalez v. Calderon-Serra</u>, 398 F.3d 1, 11 (1st Cir. 2004).  Having laid out these background principles, the Court now examines each of Corin's arguments.

A)    <u>Cognizability of the Rosbecks' Claims Against BWH</u>

1)    Cases from Other Jurisdictions

To demonstrate that the Rosbecks fraudulently joined BWH, Corin first argues that "no claim exists under Massachusetts law for breach of warranty against a hospital for supplying a medical device to a patient as part of his treatment."  Doc. No. 1 ¶ 17.  While "there is no definitive Massachusetts case law on this question," <u>Phillips</u>, 754 F. Supp. 2d at 217, Corin asserts a "uniformity of jurisprudence" against holding hospitals strictly liable for warranty breaches, Doc. No. 24 at 10, and that uniformity indicates fraudulent joinder.  <u>Id.</u> at 11.  Upon closer analysis, such uniformity does not exist, and this weakens Corin's argument.

A survey of cases reveals "than an overwhelming majority of jurisdictions refused to apply strict liability principles to claims against hospitals and physicians involving the distribution of allegedly dangerous drugs or medical devices."  <u>Hollander v. Sandoz Pharm.</u>

Corp., 289 F.3d 1193, 1217 n.22 (10th Cir. 2002); see, e.g., N. Miami Gen. Hosp., Inc. v.
Goldberg, 520 So. 2d 650, 652 (Fla. Dist. Ct. App. 1988); Brandt v. Boston Sci. Corp., 792
N.E.2d 296, 303 (Ill. 2003); Royer v. Catholic Med. Ctr., 741 A.2d 74, 78 (N.H. 1999); Cafazzo
v. Cent. Med. Health Serv., Inc., 668 A.2d 521, 525 (Pa. 1995); In re Breast Implant Prod. Liab.
Litig., 503 S.E.2d 445, 452 (S.C. 1998); Easterly v. HSP of Texas, Inc., 772 S.W.2d 211, 214
(Tex. App. 1989); McKenna v. Harrison Mem'l Hosp., 960 P.2d 486, 489 (Wash. Ct. App.
1998); see also Von Downum v. Synthes, 908 F. Supp. 2d 1179, 1183 (N.D. Okla. 2012)
("Oklahoma appellate courts have rejected imposition of liability against health care providers
based on implied warranty provisions of the UCC.").

     This sentiment is not quite unanimous.  In Skelton v. Druid City Hosp. Bd., 459 So. 2d
818 (Ala. 1984), the Alabama Supreme Court held that a hospital was liable as a seller of goods
for breaching an implied warranty when a needle used during surgery broke, leaving a portion in
the patient's body.  The court reasoned that the patient "went to the [hospital] seeking services
and products necessary to those services," was billed for both the services and the products, was
"injured by the product[] sold with the service[]," and "relied upon the skills and expertise of the
[hospital] in selecting the involved products."  Id. at 822.  As a result, the Alabama Supreme
Court permitted the plaintiff to proceed on an implied warranty theory.  If Alabama law
governed this action, BWH would face potential warranty liability.

     Corin tries distinguishing Skelton on the theory that the hospital in Skelton inspected
the needles in question before handing them over to surgeons for use, and that the hospital may
have used needles it knew were defective (either because of age or degradation).  See Doc. No.
24 at 10.  Unlike in Skelton, Corin argues, "BWH is neither alleged to have had any role in
inspecting the Cormet® prior to use by the surgeon, nor to have had any reason or ability to

know of a purported manufacturing issue with Plaintiff's Cormet® device."  Id.  However, these distinctions are unavailing.  The Alabama Supreme Court has characterized Skelton as simply "holding that the hospital could be liable for breach of warranty."  Allred v. Shirley, 598 So. 2d 1347, 1349 (Ala. 1992).

As Corin's attempts to distinguish Skelton only reveal distinctions without a difference, the Court finds a split in authorities.  In light of this split, and the fact that the Court resolves all legal ambiguities in favor of remand, Corin faces an uphill battle in proving fraudulent joinder.  See Ioli v. Zimmer Holdings, Inc., No. CV-14-00245-PHX-PGR, 2014 WL 1607360, at *2 (D. Ariz. Apr. 22, 2014) ("Speculating as to whether Arizona courts may or may not adopt the majority position in the future regarding the Hospital's alleged liability is not part of that determination"); Phillips, 754 F. Supp. 2d at 217 (ordering remand because "it is plausible that the Massachusetts Supreme Judicial Court ("SJC") would follow the few state courts which have held that a hospital can be deemed a seller or distributor of medical devices for the purposes of a product liability claim").[7]

    2)    Massachusetts Law in Other Areas

Besides surveying other jurisdictions, Corin argues that the Rosbecks' claim against BWH has no reasonable probability of success, even without any Massachusetts case law on

---

[7] Corin cites three cases for the proposition that this Court should remand, even when applicable state law is unclear. Doc. No. 24 at 15.  However, all three considered inapplicable circumstances.  Pleasant v. Dow Corning Corp., No. Civ.A.3:92-3180-17, 1993 WL 1156110, at *2-5 (D.S.C. Jan. 7, 1993), did not acknowledge, let alone address, the split in authority over hospitals' liability.  The court in Roell v. Stryker Corp., No. 3:06-cv-443-HTW-LRA, 2007 WL 2783357, at *3 (S.D. Miss. Sept. 24, 2007), was bound by Fifth Circuit precedent that had determined that hospitals are not sellers.  And, as Corin acknowledges, Kavalir v. Medtronic, No. 07C0835, 2007 WL 1225358, at *3 (N.D. Ill. Apr. 19, 2007), relied on a controlling Illinois Supreme Court decision.  Accordingly, these three cases possess little persuasive value.

    Likewise, Corin's effort to distinguish Ioli as relying on "nuances of Arizona law," Doc. No. 24 at 16, falls short.  While Ioli did note unique features of Arizona law, it used these features to buttress its main point, that because no Arizona case law was on point, the defendant "ha[d], at best, established that the plaintiff's strict liability claim against the Hospital [wa]s likely doubtful under existing Arizona law."  2014 WL 1607360, at *3.

point, because Massachusetts "has demonstrated a public policy protective of hospitals."  Doc. No. 24 at 12.  Corin cites two examples of this.  Id.  The first is the medical malpractice tribunals under Mass. Gen. Laws ch. 231 § 60B.  The other is the case Heinrich v. Sweet, 49 F. Supp. 2d 27, 41-42 (D. Mass. 1999), which, applying Massachusetts law, rejected extending abnormally dangerous activity liability to hospitals.  Neither argument goes very far.

The medical malpractice tribunals are a legislative creation that pertain to a certain class of cases, not including breach of warranty claims.  See Mass. Gen. Laws ch. 231 § 60B (directing that "every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal").  At most, this points towards a general desire to protect medical providers from frivolous negligence litigation, and resulting expenses.  See Vasa v. Compass Med., P.C., 921 N.E.2d 963, 966 (Mass. 2010).  However, even this impulse is not absolute, as the tribunals only seek to filter out a certain quality, and not class, of claims.  Further, one could plausibly argue that the fact that the legislature, in creating a limited tribunal system, showed a protective posture towards only certain claims, signaled a less protective orientation towards other claims, such as warranty breaches.  See Diaz-Carrasquillo v. Garcia-Padilla, 750 F.3d 7, 11 (1st Cir. 2014) ("Pursuant to the statutory maxim expression unius est exclusion alterius, the Legislature's exclusion of the Advocate's position from the affirmative listing of those 'saved' implies that Diaz's position was not saved.").  Either way, the tribunals do not compel finding that Massachusetts policy precludes the Rosbecks' claims against BWH.

Heinrich similarly offers Corin little help.  Heinrich refused to extend abnormally dangerous activity liability to hospitals because SJC decisions  "expressly indicated that no such extension [of abnormally dangerous activity from its original focus on land cases] was warranted."  49 F. Supp. 2d at 40.  Not only does the Rosebecks' case lack an equivalent signal

from Massachusetts case law, but <u>Heinrich</u>'s rationale for limiting the defendant hospital's liability was entirely independent of the defendant's status as a hospital. <u>Id.</u> ("The <u>Thomalen</u> court noted that recent Supreme Judicial Court precedent had expressly indicated that no such extension was warranted and therefore conclude[d] that a Massachusetts court would not allow a claim of strict liability int his case where there was no escape of a dangerous instrumentality from the defendant's property.") (internal citations and quotations omitted). <u>Heinrich</u> thus carries little persuasive weight.

  3)  Other Considerations and Reasonable Possibility

   Several considerations warrant the conclusion that Corin has failed to meet its heavy burden to establish that there is no reasonable possibility of Rosebeck prevailing on his claim against BWH. First, the case law is not uniform, as Corin suggests—one state Supreme Court permitted a breach of warranty claim against a hospital, and it has not deviated from this position since 1984. That no state supreme court has followed <u>Skelton</u> limits, but does not erase, the significance of the decision. Second, Corin has pointed to no particular provisions of Massachusetts statutory or case law suggesting a policy favoring hospitals that would foreclose or foreshadow a rejection of the claim the Rosebecks advance. Third, under black-letter Massachusetts law, whether the Uniform Commercial Code's warranty provisions encompass a transaction involving both the provisions of services (here, that aspect of the medical care in the course of the hip replacement BWH provided) and a good (the hip replacement hardware installed in Rosebeck) ordinarily presents a question of fact. 1 William D. Hawkland & Linda J. Rusch, Hawkland Uniform Commercial Code Series § 2-102:2 (2015).[8] Whether the Rosebecks

---

[8] Indeed, many of the cases from other jurisdictions Corin cited arose not on motions to dismiss, but after summary judgment, suggesting that the viability of the claim turns on facts not yet known. <u>See</u> <u>Flowers v. Huang</u>, No. C.A. 95C-09-198 SCD, 1997 WL 34724064, at *4 (Del.

have a reasonable possibility of succeeding on the claim then depends in part on evaluating the hospital's particular role on summary judgment after discovery.[9]   Certainly, ordinary experience suggests that hospitals, in the course of a surgical procedure, typically provide predominantly a service.   However, that determination in a particular case turns on factual matter not yet before the Court—be it a comparison between the service(s) provided by the hospital in the course of the procedure and those provided by other entities; the proportion of the procedure's price allocated to hardware as opposed to labor; the relative importance of the particular surgeon performing the operation as compared to the physical device inserted; or numerous other possibilities.

Fourth, the SJC, in considering certified questions concerning the application of the medical tribunal statute to a complaint raising malpractice and breach of warranty claims against a hospital did not reject the viability of the breach of warranty claims.   See Austin v. Boston Univ. Hosp., 363 N.E.2d 515, 516 n.4 (Mass. 1977). Although not directly on point, it is some evidence supporting a reasonable possibility of the claim's viability.   The Court further notes that this decision makes clear that whether a breach of warranty claim must proceed to the tribunal is not settled by the absence of warranty language in the statute.   Id.

Fifth, another federal court, facing almost an identical issue—a breach of warranty claim against a hospital stemming from a hip procedure (the only difference being that the procedure

---

Super. Ct. Aug. 20, 1997) (granting summary judgment to defendant hospital); Easterly v. HSP of Texas, Inc., 772 S.W.2d 211, 214 (Tex. App. 1989) (same).   In these circumstances, Corin cannot sustain its burden of proof to establish no reasonable possibility.

[9] Notably, this was the approach taken by then-Justice Hillman of the Superior Court when he rejected a breach of warranty claim against a hospital on summary judgment, finding that Plaintiff failed to establish that the predominant purpose of the transaction in that case was the sale of a good.   Harju v Knutson, No. 9401297, 1999 WL 1203921, at *3 (Mass. Super. Ct. Nov. 5, 1999).

was a replacement instead of a resurfacing)—remanded because no state authority was on point.
Ioli, 2014 WL 1607360 at *3.  And Ioli was not alone in remanding cases involving breach of
warranty claims against hospitals stemming from the insertion of a medical device.  Cf. Snyder,
No. CV 07-1081-ST, 2008 WL 11902 (D. Or. Jan. 7, 2008) (remanding a case involving a breach
of warranty claim against a hospital stemming from the insertion of a hernia patch).

     In light of the foregoing, the Court finds that Corin has failed to demonstrate that the
Rosbecks have no reasonable possibility of success against BWH.  Thus, the Court cannot find
BWH fraudulently joined on this basis.

     B)    Corin's Other Two Arguments

     Corin raises two additional arguments to support their contention that the Rosbecks
fraudulently joined BWH.  The first is that the Medical Device Amendments of 1976 to the
Federal Food, Drug and Cosmetic Act ("MDA") preempts the Rosbeck's warranty liability
claims against BWH.  Doc. No. 1 ¶ 19.  The second is that the three-year statute of limitations
has run.  Id. ¶ 20.  If either of these is true, the Rosbecks have no possibility (let alone a
reasonable possibility) to recover against BWH.  In their motion to remand, the Rosbecks argue
that both defenses "apply equally to all defendants in this action and are not bases for a
fraudulent joinder argument."  Doc. No. 20 at 7.  This invokes the "Common Defense Rule
('CDR')," which, as another session of the Court observed, "narrows the doctrine of fraudulent
joinder."  In re New England Mut. Life Ins. Co. Sales Practices Litigation, 324 F. Supp. 2d 288,
299 (D. Mass. 2004).  The CDR's applicability is a threshold issue—if the Court agrees with the
Rosbecks that: 1) the CDR correctly follows Supreme Court precedent; and 2) that it applies in
this instance, then preemption cannot defeat remand.

While the First Circuit has not addressed the CDR, several other circuits utilize it.  See
Hunter v. Philip Morris USA, 582 F.3d 1039, 1045 (9th Cir. 2009); Smallwood v. Illinois Cent.
R.R. Co., 385 F.3d 568, 575 (5th Cir. 2004) (en banc); Boyer v. Snap-On Tools Corp., 913 F.2d
108, 113 (3d Cir. 1990); see also Walton v. Bayer Corp., 643 F.3d 994, 1001 (7th Cir. 2011)
("[A]s we mentioned earlier, a plaintiff can defeat the fraudulent-joinder exception to the
requirement of complete diversity of citizenship by proving that his claim against the nondiverse
defendants is no weaker than his claim against the diverse defendants."); Huffman v. Baldwin,
82 F.2d 5, 8 (8th Cir. 1936) ("[The general denial of negligence] involved the merits of the
controversy.  They affected all defendants.  The denial of negligence had no tendency to show
any fraudulent joinder of resident defendants to prevent removal.").

The CDR originates from Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U.S. 146 (1914).
Cockrell involved a suit between a Kentucky estate administrator, a Virginia railroad company,
and two employees of the railroad company, both Kentucky citizens.  The railroad tried to
remove, asserting that the claims against the Kentucky employees were without merit, and pled
solely to defeat diversity.  Id. at 150-51.  The Supreme Court held that removal was
inappropriate.  The Court noted that the railroad's argument "manifestly went to the merits of the
action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case was
ill founded as to all defendants."  Id. at 153.  "Plainly," the Court concluded, "this was not such a
showing as to engender or compel the conclusion that the two employees were wrongfully
brought into a controversy which did not concern them."  Id.

Assuming, without deciding, that Cockrell compels the Court to adopt the CDR, the next
question becomes whether or not this case triggers the CDR.  Undoubtedly, the two defenses
overlap between defendants.  Because the Complaint alleges that the same set of facts generates

15

liability for each defendant, if the MDA preempts the warranty claims against BWH, it likewise

also preempts the warranty claims against the other defendants.  Similarly, given the factual

congruence, if the statute bars the warranty claim against BWH, it also bars the warranty and

negligence claims against the other defendants.[10]

However, even if Corin is correct about the merits of these two defenses, they do not

wipe out the entire suit.  If the MDA does in fact preempt the warranty claims, the Rosbecks'

negligence and 93A claims against the other defendants may yet survive.  Similarly, even if the

three-year limitations period has run, the 93A claims, which have a four-year statute of

limitations period, may still be timely.  See Mass. Gen. Laws ch. 260, § 5A.  One judge of this

Court has held that "[t]he concerns that underlie Cockrell also apply to arguments offered to

prove fraudulent joinder that simultaneously show that some claims against the diverse defendant

or defendants must fail," and that therefore " th[at] difference is irrelevant."  New England, 324

F. Supp. 2d at 306 (Keeton, J.) (emphasis in original).  Under this view, the CDR renders

irrelevant for fraudulent joinder analysis the fact that preemption may bar the breach of warranty

claim against BWH when the same preemption argument also bars the breach of warranty claims

against the other defendants, even though some of the case might survive the preemption bar.

Other courts do not apply the CDR in these circumstances and limit its application to those

circumstances in which the so-called common defense would bar the entire case against all

parties, the very situation presented in Cockrell.  See Boone v. Citigroup, Inc., 416 F.3d 382, 390

(5th Cir. 2005) ("[O]nly where the showing that there is no reasonable basis for predicting state

law would allow the plaintiff to recover against the resident defendant is such that the same

showing equally and necessarily compels the conclusion that recovery is precluded against all

---

[10] Both types of claims have a three-year statute of limitations.  Mass. Gen. Laws ch. 106 § 2-318.

non-resident defendants, then there is no improper joinder.") (internal quotations omitted)

(emphasis in original); see also Walton v. Bayer Corp., 643 F.3d 994, 1001 (7th Cir. 2011)

("[A]s we mentioned earlier, a plaintiff can defeat the fraudulent-joinder exception to the

requirement of complete diversity of citizenship by proving that his claim against the nondiverse

defendants is no weaker than his claim against the diverse defendants.") (emphasis added).

As applied to this case, both approaches yield the same result.  The preemption and

statute of limits defenses are common for these purposes under Judge Keeton's approach, and,

thus do not prevent remand whatever their actual merits.  Out of an abundance of caution, the

Court also proceeds to the merits assuming that the CDR does not apply.

1)      Preemption

Corin's preemption argument centers around the notion that the Rosbecks "have not even

attempted to plead a parallel claim sufficient to defeat federal preemption."  Doc. No. 24 at 19.

The MDA preempts state law claims "only to the extent that they are 'different from, or in

addition to' the requirements imposed by federal law."  Riegel v. Medtronic, Inc., 552 U.S. 312,

330 (2008) (citing 21 U.S.C. § 360(k)).  Accordingly, states may "provid[e] a damages remedy

for claims premised on a violation of FDA regulations; the state duties in such a case parallel,

rather than add to, federal requirements."  Id. (internal citations and quotations omitted).

Corin centers its preemption argument on the assertion that the Rosbecks "do not even

allege that BWH had any role in manufacturing the device," and that therefore the Rosbecks'

claim against BWH is not parallel.  Doc. No. 24 at 19.  This assertion is incorrect.  The

Complaint alleges that BWH's warranty breaches stemmed exclusively from the fact that the

device was both adulterated and misbranded.  See Doc. No. 1-6 ¶ 42.  If "the methods used in .

. . [a device's] manufacture, packing, storage, or installation are not in conformity with

applicable requirements," then that device is considered adulterated. 21 U.S.C. § 351(h).

Further, a device is misbranded if it fails to comply with the specific requirements that the MDA

imposes. 21 U.S.C. § 352(t). Since the Rosbecks allege solely violations of federal

requirements, and "allege a cognizable link between the violation and the injury alleged," Cline

v. Advanced Neuromodulation Sys., Inc., 921 F. Supp. 2d 1374, 1379 (citing Wolicki-Gables v.

Arrow Int'l, Inc., 634 F.2d 1296, 1301-02 (11th Cir. 2012)), they have pled a parallel claim.[11]

Corin's opposition puts an additional gloss on its preemption argument. It asserts that its

preemption argument demonstrates fraudulent joinder "not because the claim against it is

preempted (which may require consideration of the claim's merits), but because Plaintiffs have

failed to plead a claim that would satisfy [Federal] Rule [of Civil Procedure] 8[(a)] (an

appropriate inquiry under fraudulent joinder doctrine)." Doc. No. 24 at 19.

This Rule 8(a) contention is plainly incorrect. Rule 8 merely requires the plaintiff to

plead "more than a sheer possibility that a defendant has acted unlawfully," and that "the claim is

plausible on its face." Garcia-Catalan v. United States, 734 F.3d 100, 102-03 (1st Cir. 2013)

(internal citations and quotations omitted). The Complaint alleges detailed defects in the

manufacturing and testing of the Cormet System. See, e.g., Doc. No. 1-6 at ¶¶ 9(a)-(r), 17(a)-(g).

And, contrary to Corin's assertion that the Rosbecks "have not even attempted to plead a parallel

---

[11] Corin advances no argument that a state law claim seeking to hold a hospital—the final distributor of the device—
liable for the alleged failure of the device to comply with specific federal requirements adds a requirement beyond
federal law, thus resulting in preemption. To the extent either Corin's brief assertion that BWH had no role in
manufacturing the device, or its counsel's unadorned contention at the motion hearing that preemption results in
dismissal of the claims against the other parties, might be construed as an indirect argument that holding a
distributor liable is necessarily imposing an additional requirement, this is an interpretation the Court finds
unwarranted. Nonetheless, if Corin had raised this argument, it would fail in this case. Corin, on whom the burden
of proving fraudulent joinder rests, has cited no authority whatsoever limiting the MDA's requirements to
manufacturers. Nor has it cited any case, let alone any statutory language, for the proposition that holding
distributors liable for warranty breaches that result solely from violation of federal requirements imposes
requirements "which are different from, or in addition to, any requirement" under the MDA, thereby compelling
preemption. 21 U.S.C. § 360(k)(a)(1).

claim sufficient to defeat federal preemption," Doc. No. 24 at 19, the Complaint clearly alleges

that BWH's warranty liability stems from violations of 21 U.S.C. §§ 351(h) and 352(t), as well

as 21 C.F.R. §§ 803 and 820.  Doc. No. 1-6 ¶ 42.  Accordingly, the Rosbecks satisfy Rule 8.  In

light of this, the Court cannot find fraudulent joinder on the basis of preemption.

    2)    Statute of Limitations

        Corin's third argument for fraudulent joinder, that the statute of limitations bars recovery

against BWH, Doc. No. 1 ¶ 20, likewise fails.  Massachusetts law contains a three-year statute of

limitations for breaches of warranties.  Mass. Gen. Laws ch. 106 § 2-318.  Corin asserts that the

Rosbecks filed suit too late, as either Rosbeck's hip pain in 2010 or his blood test results in

2011—both of which occurred more than three years before the suit commenced, see Doc. No. 1-

6 at 22 (dating the Complaint as filed April 29, 2015)—"commenced the limitations period."

Doc. No. 24 at 18.  If Corin is correct, then the Rosbecks have no possibility of recovery from

BWH.

        While, as explained above, the Rosbecks' CDR response, Doc. No. 20 at 7, is unavailing,

they also have a strong argument on the merits.  Massachusetts law applies the "discovery rule"

to products liability actions.  Evans v. Lorillard Tobacco Co., 990 N.E.2d 997, 1028 n.19 (Mass.

2013).  "[U]nder [the] discovery rule, a claim accrues and the statute of limitations clock

commences when a plaintiff knows, or reasonably should have known, 'that she has been harmed

or may have been harmed by the defendant's conduct.'"  Id. at 1028 (quoting Bowen v. Eli Lilly

& Co., 557 N.E.2d 739, 741 (Mass. 1990)).  A plaintiff thus needs knowledge or sufficient notice

of both: 1) the fact that she has suffered harm; and 2) that the defendant caused the harm.  Riley

v. Presnell, 565 N.E.2d 780, 784 (Mass. 1991).

"Generally, an issue concerning what the plaintiff knew or should have known is a factual question appropriate for the trier of fact." Koe v. Mercer, 876 N.E.2d 831, 836 (Mass. 2007). However, the Court can rule on the issue in a motion to dismiss. See Epstein v. Seigel, 485 N.E.2d 947, 948 (Mass. 1985). Courts in that posture can examine the statute of limitations question "so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Rodi v. S. New England Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004). As the Court has explained, because this case is in a fraudulent joinder posture, Corin's burden is even higher. See Mayes, 198 F.3d at 466 n. 15. Corin must demonstrate no reasonable possibility of timeliness for the claims against BWH exists. See Universal Trucking, 765 F.3d at 108.

The Complaint alleges that in April 2010, about two years after his hip resurfacing surgery, Mr. Rosbeck began developing a rash and experiencing hip pain, depression, severe tinnitus, and "brain fog." Doc. No. 1-6 ¶ 6. In August 2011, he had a blood test, which revealed "sharply elevated levels of chromium and cobalt." Id. ¶ 7. Nevertheless, Mr. Rosbeck did not receive a diagnosis for the cause of his troubles until he underwent revision surgery in June 2013. Id. As the Rosbeck's commenced this action on April 29, 2015, Id. at 22, their claim is time-barred if it accrued before April 29, 2012.

Corin argues that both the 2010 symptoms and the 2011 blood test triggered the statute. Doc. No. 24 at 18. While these two events support finding that Mr. Rosbeck knew he was suffering some harm, they do not by themselves establish with certitude that he knew or should have known that the resurfacing system caused the harms. For example, it might plausibly be reasonable for Mr. Rosbeck, consistent with the facts of the Complaint, to imagine that his

symptoms, which were not confined to his hip, stemmed from a source besides a defective

resurfacing system.  As the First Circuit has observed, "[a]bsent some warning sign, people

ordinarily are not expected to assume that undesirable outcomes are the result of . . . wrongful

acts or omissions attributable to their . . . physicians."  <u>RTR Tech., Inc. v. Helming</u>, 707 F.3d 84,

90 (1st Cir. 2013).

Likewise, the Complaint itself does not establish that a reasonable person in Mr.

Rosbeck's position should have known, after the blood test, that the resurfacing system caused

his elevated levels of chromium and cobalt.  Patients are not presumed to know the medical

diagnosis of a particular blood test, and any diagnosis would presumably require information not

set forth in the Complaint.  Because this issue needs more factual development, it lacks the

requisite certitude to rule against the Rosbecks at this stage.

Corin offers up two cases in support of their argument that the statute has run, but neither

goes very far.  Corin cites <u>In re Boston Sci. Corp. Pelvic Repair Sys. Prods. Liab. Litig.</u>, MDL

No.2326, 2014 WL 3495977, at *3-4 (S.D.W. Va. July 11, 2014), for the proposition that "a

reasonable person in Mr. Rosbeck's position . . . would attribute pain in his <u>hip</u> to his <u>hip</u>

<u>implant.</u>"  Doc. No. 24 at 18 (emphasis added).  However, <u>Boston Sci.</u> rested its finding of a

time-bar solely on the grounds that "<u>the plaintiff herself admitted that she was aware</u> that the

sling was causing her injuries as early as three weeks after implantation."  2014 WL 3495977, at

*3.  No such actual knowledge, at least at any of the two relevant points in time, existed in this

case, rendering <u>Boston Sci.</u> inapposite.  <u>See</u> Doc. No. 1-6 ¶ 7.  The fact that <u>Boston Sci.</u> relied on

the plaintiff's deposition, evidence only available at summary judgment, further pushes against

finding the Rosbecks' claim time-barred in a fraudulent joinder posture.

Corin fares little better with <u>Doucette v. Handy & Harmon</u>, 625 N.E.2d 571, 572 (Mass. App. Ct. 1994), which upheld a special question put to a jury asking whether, on or before the limitations date, the plaintiff "learned or should have learned that the likely cause of her [symptoms] was her exposure to fumes, gases and vapors during the jewelry-making process." The plaintiff in <u>Doucette</u> argued that her cause of action did not accrue until she had a diagnosis of the "particular ingredient . . . that was the cause of her symptoms." <u>Id.</u>  The court rejected that argument, finding it sufficient that the plaintiff knew that her symptoms were "probably caused by inhalation of the fumes and vapors emitted from the jewelry-making process."  By contrast, the Complaint does not make it probable that, after the 2011 blood test, Mr. Rosbeck knew or should have known that a defective hip resurfacing system was causing his abnormal results. Only once he had that knowledge of causation would the duty to investigate kick in.  <u>See id.</u> at 573 ("Thus put on notice, the plaintiff had a duty to investigate the precise mechanism whereby the fumes from jewelry-making-principally emitted during soldering-were causing her symptoms."); <u>cf.</u> <u>Epstein</u>, 460 F.3d at 188 (holding that a plaintiff had a duty to investigate the defendant's potential misconduct because he had "cause for concern," evidenced by a letter the plaintiff wrote to the defendant, informing the defendant of the plaintiff's belief that the defendant was engaged in wrongdoing against the plaintiff).  In light of the above, the Court cannot find BWH fraudulently joined on the basis of Corin's statute of limitations defense.

**V.**     **Conclusion**

For the reasons stated above, the Rosbecks' Motion to Remand, Doc. No. 19, is ALLOWED.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin

United States District Judge